Rhett O. Millsaps II (SBN 348949)
rhett@lex-lumina.com
Mark A. Lemley (SBN 155830)
mlemley@lex-lumina.com
LEX LUMINA PLLC
700 S. Flower Street, Suite 1000
Los Angeles, CA  90017
Telephone:  (213) 600-6063
Facsimile:  (646) 906-8657

*Attorneys for Plaintiff Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>NGUYEN VAN DUC, PHAM VAN THIEN, and DOES 1-20,<br><br>Defendants. | Case No. 23-cv-5824-SK<br><br>**PLAINTIFF GOOGLE LLC'S NOTICE OF MOTION AND RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS NGUYEN VAN DUC AND PHAM VAN THIEN**<br><br>Date:        August 26, 2024<br>Time:        9:30 a.m.<br>Location:    Courtroom C, 15th Floor<br>Judge:       Hon. Sallie Kim |

1

### NOTICE OF MOTION

2       **PLEASE TAKE NOTICE** that on August 26, 2024, or as soon thereafter as this matter may

3   be heard before Magistrate Judge Sallie Kim in Courtroom C, 15th Floor at 450 Golden Gate Ave., San

4   Francisco, CA 94102, Plaintiff Google LLC will move this Court to enter default judgment under

5   Federal Rule of Civil Procedure 55(b) against Defendants Nguyen Van Duc and Pham Van Thien.  This

6   motion is based upon this notice, the following memorandum of points and authorities, the declaration

7   of Ethan Yee, the pleadings and papers on file, all other matters of which the Court may take judicial

8   notice, and oral argument of counsel, should the Court request it.

9

### RELIEF SOUGHT

10       Entry of an order of default judgment, including a permanent injunction, pursuant to Fed. R.

11   Civ. P. 55(b)(2).

12

13   Dated: July 17, 2024              Respectfully submitted,

14                                  LEX LUMINA PLLC

15                                  By: */s/ Rhett O. Millsaps II*

16                                      Rhett O. Millsaps II (SBN 348949)

17                                      rhett@lex-lumina.com
                                   Mark A. Lemley (SBN 155830)

18                                      mlemley@lex-lumina.com
                                   700 S. Flower Street, Suite 1000

19                                      Los Angeles, CA  90017
                                   Telephone:  (213) 600-6063

20                                      Facsimile:  (646) 906-8657

21                                    *Attorneys for Plaintiff Google LLC*

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Defendants Nguyen Van Duc and Pham Van Thien have failed to appear in this case or respond to Google's allegations that Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA"), Google's Terms of Service ("TOS"), and California law by systematically abusing Google accounts to submit a barrage of fraudulent notices of copyright infringement (or "Takedown Requests") aimed at illegally removing *hundreds of thousands* of Defendants' competitors' website URLs from Google Search results.  The Clerk entered default on May 1, 2024 (ECF No. 25), and Google now respectfully requests that the Court[1] enter default judgment under Rule 55(b).

### II.  BACKGROUND

Defendants have weaponized Google's DMCA notice-and-takedown systems and procedures and used them not for their intended purpose of expeditiously removing allegedly infringing content, but instead to have their competitors' legitimate content removed based on false allegations. Specifically, Defendants—led primarily by Vietnam-based individual Defendants Nguyen and Pham[2]—have created and abused dozens of Gmail accounts to submit thousands of fraudulent Takedown Requests targeting more than 117,000 third-party website URLs.  ECF No. 1 ("Compl.") ¶¶ 1-2, 31-39; Declaration of Ethan Yee dated July 15, 2024 ("Yee Decl.") ¶¶ 2-5, 18.  Defendants are connected with websites selling printed t-shirts, and their unlawful conduct aims to remove competing third-party sellers from Google Search results.  Compl. ¶¶ 2, 31, 33; Yee Decl. ¶¶ 2-3.  Defendants admitted as much in a YouTube video, titled "2022 SEO 3 minutes to take top 1 google by Fake DMCA complaints," in which they boasted about their fraudulent conduct and encouraged others to replicate it.  Compl. ¶ 37; Yee Decl. ¶ 16.  Their flagrant misconduct violates the DMCA and Google's TOS

---

[1] Because "[n]o defendant has appeared or consented to a magistrate judge's jurisdiction in this case" any judgment must be entered by an Article III judge.  *Cantu v. Doe*, No. 1:20-CV-00386-JDP, 2020 WL 5411853, at *3 (E.D. Cal. Sept. 9, 2020); s*ee also Crescent City Harbor Dist. v. M/V Intrepid*, No. C-08-1007 JCS, 2008 WL 5211023, at *2 (N.D. Cal. Dec. 11, 2008); *Gold Value Int'l Textile, Inc. v. Capulet, LLC*, No. CV 15-3418 SS, 2015 WL 13916603, at *1 (C.D. Cal. June 30, 2015).

[2] Google moves for default judgment at this time only against these individual Defendants, though the scope of Defendants' conduct suggests that Nguyen and Pham are not lone bad actors.

1  other policies, and it constitutes intentional interference with contractual relations under state law.

2  Compl. ¶¶ 3, 17, 20-22, 44-60; Yee Decl. ¶¶ 10-12.

3  On November 13, 2023, Google filed this action, *inter alia*, to protect victims from Defendants'

4  fraudulent scheme; to disrupt Defendants' anti-competitive activities; to prevent Defendants from

5  causing further harm to Google, Google's users, and the public; and to raise public awareness of the

6  harms caused by these and other fraudulent Takedown Requests.

7  On November 22, 2023, the Court granted Google's Motion to Authorize Alternative Service

8  pursuant to Federal Rule of Civil Procedure 4(f)(3).  ECF No. 19.  The Court authorized Google to

9  serve Defendants via the Gmail addresses that Defendants used to submit their fraudulent Takedown

10  Requests to Google and via SMS message to the phone numbers associated with those addresses.  *Id.*;

11  *see also* ECF Nos. 15, 16 (Motion to Authorize Alternative Service).

12  On November 22, 2023, Google served Defendants via the four Gmail accounts.  *See* ECF No.

13  23.  Google's subscriber records show that each account remained active and was accessed that day or

14  later—with two of the accounts having been accessed dozens of times in the weeks that followed—

15  meaning that Defendants are extremely likely to have seen Google's service email.  *Id.*; *see also* ECF

16  No. 16, Exs. 2-5.  But for the avoidance of doubt, on December 4, 2023, Google further served

17  Defendants via SMS messages to the three mobile phone numbers also authorized by the Court.  *See*

18  ECF No. 23.  To date, Defendants have not answered or otherwise responded to the complaint.  *See*

19  ECF No. 24-1.  The Clerk entered default on May 1, 2024.  ECF No. 25.

20  **III.   ARGUMENT**

21  **A.   The Court Has Subject Matter and Personal Jurisdiction.**

22  This Court has original subject matter jurisdiction over Google's DMCA claim under 28 U.S.C.

23  §§ 1331 and 1338.  The Court has supplemental jurisdiction over Google's state law claims under 28

24  U.S.C. § 1367.

25  This Court has personal jurisdiction over Defendants Nguyen and Pham on two independently

26  sufficient bases.  First, Defendants consented to personal jurisdiction by accepting Google's TOS to

27  create and use the Gmail accounts to submit their fraudulent Takedown Requests.  Compl. ¶¶ 10, 20;

28  Yee Decl. ¶ 10; *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("In general…a party has consented

4

to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties."); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1021-22 (N.D. Cal. 2015) (ruling in § 512(f) case that defendants' "conduct of accepting the terms of service is sufficient to constitute consent to personal jurisdiction in California"); *Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*, Case No. 19-cv-07971-SK, 2022 WL 2289064, at *2-3 (N.D. Cal. Feb. 1, 2022) (Kim, M. J.), *report and recommendation adopted*, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) (same).

Second, the Court has personal jurisdiction over Defendants under California's long-arm jurisdictional statute because (i) Defendants "acted intentionally when [they] sent takedown notices to" Google; (ii) Defendants' "sending the takedown notice to [Google] with the knowledge and purpose that it would induce [Google] to remove content from [Google Search results] individually targeted [Google] and thus constituted conduct expressly aimed at California," where Google is headquartered; (iii) Google "spent substantial time and resources in dealing with the meritless takedown notices and suffered reputational harm" and lost advertising revenue of at least between $2 to $3 million (Yee Decl. ¶¶ 20-22); and (iv) "the claim for misrepresentation under § 512(f) directly relates to the takedown notices sent by Defendant[s] to [Google] in California." *Automattic*, 82 F. Supp. 3d at 1022-25.

## B. The *Eitel* Factors Weight in Favor of Default Judgment.

When evaluating a motion for default judgment, courts in the Ninth Circuit consider seven factors, commonly known as the *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citations omitted).

Where, as here, a defendant abuses a public internet platform and fails to appear in court, the *Eitel* factors strongly favor default judgment. *See, e.g., Automattic*, 82 F. Supp. 3d at 1033 (granting

motion for default judgment against foreign individual who submitted fraudulent takedown requests in violation of section 512(f)); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (granting motion for default judgment against a software developer who breached Craigslist's terms of use by posting unauthorized ads); *Facebook, Inc. v. Kokhtenko*, No. 21-CV-03036-YGR (LB), 2021 WL 7448619, at *6 (N.D. Cal. Dec. 3, 2021), *report and recommendation adopted as modified*, 2022 WL 1195439 (N.D. Cal. Feb. 18, 2022) (granting motion for default judgment against a counterfeit luxury goods retailer who sold products on Facebook in violation of its terms of service); *Meta Platforms, Inc. v. Arowokoko*, No. 22-CV-00803-DMR, 2023 WL 3035454, at *11 (N.D. Cal. Feb. 24, 2023), *report and recommendation adopted*, 2023 WL 4013626 (N.D. Cal. May 9, 2023) (granting motion for default judgment against perpetrators of phishing scheme who impersonated financial services provider to obtain social media users' personal information in violation of platform's terms of service).

### 1. *Eitel* Factor No. 1: The Possibility of Prejudice to Google is High.

If this Court does not grant default judgment, Google will suffer prejudice because it will be without legal recourse to stop Defendants' fraud and misrepresentation. Defendants' conduct will continue to harm consumers and third-party businesses, stifle competition, and risk damaging Google's brand. This factor thus weighs heavily in favor of default judgment. *See, e.g., Automattic*, 82 F. Supp. 3d at 1028 (ruling that "Plaintiffs will be left without a remedy [for violation of section 512(f)], and therefore prejudiced, if default judgment is not granted"); *Craigslist*, 694 F. Supp. 2d at 1054 (ruling that failure to enter default judgment would leave plaintiff with no means to prevent further infringement and would cause substantial harm); *Kokhtenko*, 2021 WL 7448619 at *6 (ruling that defendant's refusal to litigate leaves plaintiffs without recourse unless the court grants default judgment); *Meta Platforms*, 2023 WL 3035454 at *5 (noting that plaintiffs would "likely have no other avenue for recovery" due to defendants' failure to appear and that this weighed in favor of granting default judgment).

### 2. *Eitel* Factor Nos. 2 & 3: Google's Claim Is Meritorious and Sufficiently Pleaded.

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038,

1048 (N.D. Cal. 2010).  After an entry of default, well-pleaded allegations in the complaint are deemed true, except for the amount of damages.  *Combs*, 285 F.3d at 906.  Here, each of Google's claims are meritorious and sufficiently pleaded.

a.  <u>Misrepresentation of Copyright Infringement</u>.

17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."  Thus, to state a claim for misrepresentation under section 512(f), Google must allege that Defendants "knowingly and materially misrepresent[ed]" that copyright infringement has occurred, that Google "relied" on such misrepresentations, and that Google has been "injured" as a result.  *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (noting that "the statutory language … is sufficiently clear on its face and does not require importation of standards from other legal contexts"); *see also Automattic*, 82 F. Supp. 3d at 1026 (ruling that section 512(f) had extraterritorial application to foreign resident defendant and granting default judgment based on defendant's alleged submission of fraudulent DMCA takedown requests).

Here, Google has sufficiently alleged that Defendants submitted fraudulent DMCA Takedown Requests, unlawfully seeking removal of more than 117,000 third-party website URLs and corresponding product listings from Google Search results. Compl. ¶¶ 27-39; Yee Decl. ¶¶ 2-5, 18-22. Defendants did so knowing that their claims of infringement were false.  Compl. ¶¶ 38, 46-47; Yee Decl. ¶¶ 16-17.  In reliance on the fraudulent takedown requests, Google delisted the targeted URLs from Google Search results, impacting more than 117,000 web pages belonging to third parties.  *Id*. ¶ 48; Yee Decl. ¶¶ 18-19.  Google suffered economic harm from lost advertising revenue and business relations, in addition to expending significant resources to investigate and remedy Defendants' wrongdoing. Compl. ¶ 49; Yee Decl. ¶¶ 20-22.

b.  <u>Breach of Contract</u>.

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Google has sufficiently pled each element here.

First, valid contracts exist between Google and Defendants.  Defendants agreed to the Google TOS and Gmail Program Policies in order to create and use the Gmail accounts that they abused in sending the fraudulent Takedown Requests.  Compl. ¶ 21; Yee Decl. ¶ 10.  This is sufficient to establish the existence of a contract under California law.  *See, e.g., Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970 (N.D. Cal. 2015) ("Grunin agreed to Facebook's Terms when he created a Facebook account and accessed Facebook's services."); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099 (N.D. Cal. 2014) ("Here, the Yelp terms of service is a contract."); *Craigslist, Inc.*, 694 F. Supp. 2d at 1059 ("Plaintiff has alleged that the TOUs existed as a valid contract between it and all users, including the Defendants.").

Second, Google performed all of its material obligations under the contract.  Compl. ¶ 52.

Third, Defendants breached the TOS and Gmail Program Policies, which are incorporated into the TOS, by creating dozens of Gmail accounts that they used to submit fraudulent Takedown Requests targeting their competitors.   Compl. ¶¶ 22, 31, 53; Yee Decl. ¶¶ 2-5, 10-12, 15-17.   Defendants' Takedown Requests are fraudulent because they contain, *inter alia*: (a) fake identifying information, (b) false representations that the parties submitting the requests represented large companies or other public figures, and (c) false representations that the submitting parties owned a copyright over material found on the competitor's website.  *See* Compl. ¶ 33; Yee Decl. ¶¶ 2-3, Ex. A.  Defendants' alleged conduct materially breached provisions of the TOS and Gmail Program Policies including, *inter alia*, that users: "comply with applicable laws" (TOS); not "abuse…the services – for example, by accessing or using them in fraudulent or deceptive ways" (TOS); not "create or use multiple accounts to abuse Google policies" (Gmail Program Policies); "respect copyright laws" (Gmail Program Policies); and not "use Gmail to promote, organize, or engage in unlawful activities" (Gmail Program Policies).  Compl. ¶¶ 21-22.

Finally, Defendants' many breaches have caused Google to suffer damages.  These alleged damages include: the costs of investigating and responding to takedown requests fraudulently targeting

more than 117,000 third-party website URLs; lost advertising revenue; and damage to Google's reputation among consumers and businesses.  Compl. ¶¶ 39-43; Yee Decl. ¶¶ 20-22.

### c.   Intentional Interference with Contractual Relations.

Under California law, the elements to state a cause of action for intentional interference with contractual relations are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 738 (N.D. Cal. 2020) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Google has sufficiently pled the elements of this claim.  Google formed valid contracts with third-party sellers who purchase advertising that appears atop Google Search results ("Search Ads") and elsewhere.  Compl. ¶¶ 30, 56; Yee Decl. ¶¶ 2, 7.  Defendants knew of these contractual relationships and intentionally created and used dozens of Gmail accounts for the improper purpose of interfering with said relationships.  Compl. ¶¶ 37, 57-58; Yee Decl. ¶¶ 16, 20.  Specifically, Defendants made thousands of false submissions designed to fraudulently induce Google to cancel or limit its business with certain Search Ads customers by falsely claiming that those customers' URLs contained material that infringed copyrights that do not exist, are not really owned by Defendants, or are not actually infringed by the customers' web pages.  *See* Compl. ¶¶ 31-38, 58; Yee Decl. ¶¶ 2-5.  Defendants' interference with Google's contractual relations caused those Search Ads customers and Google to lose millions of dollars in revenue by the time Google was able to reinstate all the URLs targeted by the fraudulent submissions.  Compl. ¶ 41; Yee Decl. ¶ 20.

Accordingly, the second and third *Eitel* factors also weigh heavily in favor of default judgment.

### 3.   *Eitel* Factor No. 4: Google Is Not Requesting Monetary Relief.

Under the fourth *Eitel* factor, a "[c]ourt must consider the amount of money at stake in relation to the seriousness of defendant's conduct."  *Tech. LED Intell. Prop., LLC v. Revogi, LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) (citing *Eitel*, 782 F.2d at 1471-72).  Default judgment is appropriate where "the sum of money at stake is tailored to the specific misconduct of the defendant."  *Bd. of Tr. v. Core Concrete Constr., Inc.*, No. C 11–02532 LB, 2012 WL 380304,

at *1, *4 (N.D. Cal. Jan. 17, 2012).  At this stage, although Google is entitled to monetary relief, it seeks only an injunction.[3]  This factor thus weighs heavily in favor of default judgment.  *See Meta Platforms*, 2023 WL 3035454 at *8.

### 4.  *Eitel* Factor No. 5: There Is No Possibility of Dispute of Material Facts.

There is little possibility of genuine dispute over any of the material facts in this case.  Google has presented detailed allegations, based on documentary evidence in Google's possession, regarding Defendants' systematic abuse of Gmail accounts and submission of fraudulent Takedown Requests in violation of section 512(f) and Google's TOS and Gmail Program Policies.  Even if Defendants were to appear in this action, it is highly unlikely that Defendants could dispute these facts.  *See*, *e.g.*, *Craigslist*, 694 F. Supp. 2d at 1061 (possibility of a dispute unlikely); *Meta Platforms*, 2023 WL 3035454 at *8 (same); *Automattic*, 82 F. Supp. 3d at 1028-29 (granting default judgment where "Defendant could conceivably dispute some of the material facts if he were to appear, but he has failed to do so, and the communications between Plaintiffs and Defendant—which would likely be the key evidence in any such dispute—are properly before the Court").

### 5.  *Eitel* Factor No. 6: Defendants' Default Is Not Due To Excusable Neglect.

Defendants' default did not result from excusable neglect.  In *Eitel*, the defendant's late response constituted excusable neglect because the defendant reasonably believed the litigation had ended.  *See* 782 F.2d at 1472.  Here, by contrast, there is nothing in the record to establish that Defendants had an excusable reason for failing to appear.  Google properly served Defendants via text message and via four separate Gmail accounts that Defendants created and used to perpetrate their unlawful scheme.  *See* ECF Nos. 19, 23.  Two of those Gmail accounts were last accessed on the day of service, and two of the accounts have been accessed dozens of times since then.  *See* ECF No. 23. Plaintiffs have had *months* to appear since but have failed to do so.  Thus, it appears that Defendants had no intention of responding to the complaint, which is *inexcusable* neglect.

---

[3] Google reserves the right to pursue damages, however, if the Court enters default judgment and Defendants later appear to challenge it.

1

2

**6. *Eitel* Factor No. 7: The *Eitel* Factors Outweigh the Federal Policy That Favors a Decision on the Merits.**

3 Finally, resolution on the merits is impossible as Defendants have made no effort to appear in

4 this Court or to answer Google's complaint. *See, e.g., Automattic*, 82 F. Supp. 3d at 1029 (granting

5 default judgment where resolution on the merits was "not possible" because Defendants "failed to

6 appear"); *Craigslist*, 694 F. Supp. 2d at 1061 (stating that default judgment is warranted where a

7 defendant's failure to appear makes a decision on the merits impossible); *Kokhtenko*, 2021 WL

8 7448619 at *7 (stating that a defendant's failure to participate supports default judgment); *Meta

9 Platforms*, 2023 WL 3035454 at *8 (stating that default judgment is appropriate when "[a] decision on

10 the merits is impractical as Defendants have refused to litigate th[e] action"); *Kloepping v. Fireman's

11 Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996) (stating that although

12 default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference,

13 standing alone, is not dispositive").

14 **C.  Google is Entitled to Injunctive Relief.**

15 Section "1203(b)(1) of the DMCA authorizes a court to 'grant...permanent injunctions on such

16 terms as it deems reasonable to prevent or restrain a violation.'" *Cadence Design Systems, Inc. v.

17 Pounce Consulting, Inc.*, Case No. 17-cv-04732-PJH (SK), 2019 WL 1768619, at *10 (N.D. Cal. Apr.

18 1, 2019) (Kim, M. J.) (quoting 17 U.S.C. § 1203(b)(1)), *report and recommendation adopted*, 2019

19 WL 1767332 (N.D. Cal. Apr. 22, 2019).  "Permanent injunctive relief is appropriate where a plaintiff

20 demonstrates: (1) it has already suffered irreparable injury; (2) there is no adequate remedy at law; (3)

21 the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the

22 public's interest." *Id*.  These factors support issuing a permanent injunction against Defendants.

23 First, Google "has shown that it has suffered irreparable harm that cannot be compensated by

24 monetary damages, including harm to its reputation, good will," systems, and DMCA notification and

25 takedown procedures. *ILikeAd Media*, 2022 WL 2289064 at *6.  Second, the balance of hardships

26 weighs in favor of issuing a permanent injunction; "[g]iven the nature of Defendants' fraudulent

27 activity, deliberately implemented to" abuse Google's systems and procedures, "and the ease with

28 which Defendants could renew their fraudulent scheme, the potential harm to [Google] would be great,

11

1  compared with the lack of harm to Defendants for merely being held to follow the law and refrain from"

2  abusing Google's systems and attacking Google's customers and other third parties. *Id*. Finally, the

3  public interest would be served by an injunction, as Google Search has become a trusted hub for global

4  commerce, and the public relies on Google Search to provide accurate listings of third-party

5  competitors' goods and services. *See id*. (citing *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp.

6  3d 765, 785 (N.D. Cal. 2017); Compl. ¶¶ 28-29; Yee Decl. ¶ 6.

7      Accordingly, to prevent further fraudulent abuse of Google's systems and unlawful targeting of

8  Google's customers by Defendants, the Court should issue a permanent injunction that prohibits

9  Defendants from (i) submitting any Takedown Requests to Google based on false assertions of rights

10  of copyright ownership; (ii) creating or attempting to create any new Google accounts; (iii) using any

11  Google products or services to promote any of Defendants' websites or products; (iv) using any Google

12  products or services to harm or attempt to harm any third parties; and (v) assisting, aiding, or abetting

13  any other person or entity in engaging or performing any of the activities described in (i) through (iv).

14  *See, e.g.*, *ILikeAd Media*, 2022 WL 2289064 at *6 (granting default judgment with substantially similar

15  injunctive relief for abuse of Facebook's platform in violation of federal statutes).

16  **7.   CONCLUSION**

17      Google respectfully requests that the Court enter default judgment against Defendants under

18  Rule 55(b)(2).

19

20  Dated: July 17, 2024                    Respectfully submitted,

21                                           LEX LUMINA PLLC

22                                           By: /s/ *Rhett O. Millsaps II*

23                                               Rhett O. Millsaps II (SBN 348949)
                                                 rhett@lex-lumina.com
24                                               Mark A. Lemley (SBN 155830)
                                                 mlemley@lex-lumina.com
25                                               700 S. Flower Street, Suite 1000
                                                 Los Angeles, CA  90017
26                                               Telephone:  (213) 600-6063
                                                 Facsimile:  (646) 906-8657
27

28                                           *Attorneys for Plaintiff Google LLC*

PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT                    CASE NO. 23-CV-5824-SK