UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NGUYEN VAN DUC, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-05824-SK<br><br>**ORDER OF REASSIGNMENT WITH REPORT AND RECOMMENDATION ON DEFAULT JUDGMENT**<br><br>Regarding Docket No. 29 |

Now before the Court is the motion for default judgment filed by Plaintiff Google LLC ("Google") against Defendants Nguyen Van Duc and Pham Van Thien collectively, "Defendants"). (Dkt. No. 1.) Defendants have not appeared in this action. The Clerk of Court entered a notice of entry of default on May 1, 2024. (Dkt. No. 25.) Because Defendants have not consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c), the undersigned does not have the authority to make a dispositive ruling in this case. Accordingly, the Court ORDERS that this case be REASSIGNED to a district judge. For the reasons set forth below, the Court RECOMMENDS that Google's motion for default judgment be GRANTED.

**A. Background**

Google is a limited liability company organized under the laws of the state of Delaware with its principal place of business in the State of California. (Dkt. No. 1.) Defendants are, on information and belief, residing in Vietnam. (*Id.*, ¶¶ 6-7.)

Google brings three claims against Defendants. Google first brings a claim for misrepresentation of copyright infringement. (*Id.*, ¶ 45-46.). Under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), Defendants allegedly submitted fraudulent takedown requests to Google's designated Copyright Agent via the Webform and unlawfully sought the removal of more than 117,000 third-party website URLs and their corresponding

1    product listings from Google Search results based on knowingly false allegations of copyright

2    infringement. (*Id*.) As a result, Google delisted the fraudulently targeted URLs and suffered

3    economic harm from lost advertising revenue and business relations, as well as expending

4    resources to investigate and remedy the Defendants' actions. (*Id*., ¶ 48.) Second, Google asserts

5    that Defendants breached their contractual duties under Goggle's Terms of Service ("TOS") and

6    Gmail Program Policies by creating dozens of Gmail accounts to carry out their other fraudulent

7    activities. (*Id*., ¶ 53.) Third, Google claims Defendants knowingly and intentionally created and

8    used dozens of Gmail accounts for the purpose of interfering with Google's legitimate contractual

9    relationships with its Search Ads customers and that these actions resulted in Google's suffering

10   damage with Google's contractual relations with their third-party customers. (*Id*., ¶ 58-60.)

11         Under the DMCA, 17 U.S.C. § 512(c), a "notice-and-takedown" mechanism gives

12   copyright owners and online service providers the procedural and legal ability to properly handle

13   copyright infringement claims. (*Id*., ¶ 13.) Because online service providers like Google cannot

14   feasibly make difficult determinations about the status of copyrights and user-posted content, the

15   DMCA instead places the burden on the claimants asserting copyright infringement. (*Id*., ¶ 14.)

16   In response to this burden being placed on the claimant, the DMCA protects online service

17   providers from liability for copyright infringement based on content posted on their site, as long as

18   the online service providers remove content that is allegedly infringing. (*Id*.) A person authorized

19   to act on behalf of the copyright owner must submit the claim under the DMCA. (*Id*., ¶ 15.) The

20   claim must contain six elements: (1) a signature of a person authorized to act on behalf of the

21   owner, (2) identification of the copyrighted work that was allegedly infringed, (3) identification of

22   the material that is allegedly infringing on the copyright, (4) enough information for the online

23   service provider to contact the complaining party, (5) a statement that the complaining party has a

24   *good faith belief* that use of the material is not authorized by the copyright, and (6) a statement,

25   under the penalty of perjury, that the information provided is accurate and true. (*Id*.) To protect

26   online service providers from fraudulent takedown requests, the DMCA provides a cause of action

27   for an online service provider burdened with a knowing, material misrepresentation. (*Id*., ¶ 17.)

28         For Google, claimants can submit their request through the "Copyright Webform." (*Id*., ¶

19.) To access the Webform, the user must first create a Gmail account and agree to Google's TOS and Gmail Program Policies. (*Id*., ¶ 20.) Included under the Webform are two boxes that a claimant must affirmatively read and check. (*Id*., ¶ 23.) First, claimants must affirm that they have a "good faith belief that the use of the copyrighted materials described above as allegedly infringing is not authorized by the copyright owner, its agent, or the law." (*Id*.) Second, claimants must swear, under the penalty of perjury, that all the information is accurate and true. (*Id*.)

Google filed its Complaint on November 13, 2023, in Federal District Court in the Northern District of California. (Dkt. No. 1; *see* Dkt. No. 29.) On November 22, 2023, the Court granted Google's Motion to Authorize Alternative Service. (Dkt. No. 29.) Google served Defendants the same day via the same Gmail address that Defendants used to submit their fraudulent Takedown Requests to Google and via SMS message to the phone numbers associated with those addresses. (*Id*.) On December 4, 2023, Google further served Defendants via SMS messages to three mobile phone numbers also authorized by the Court. (*Id*.) Because Defendants have not answered or otherwise responded to the Complaint, the Clerk entered a notice of default in favor of Google on May 1, 2024. (*Id*.).

**B. Jurisdiction and Service.**

Before entering default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *See In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction for Google's claim under the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction for Google's claims for breach of contract and intentional interference with contractual relations. 28 U.S.C. § 1367.

The Court likewise has personal jurisdiction over Defendants. When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long arm statute, Cal. Civ. Proc. Code § 410.10, which determines personal jurisdiction, is coextensive with federal due process requirements, and therefore the analysis for personal jurisdiction is the same under both state and federal law. *Id*. at 800-01. "Due

1  process requires that a defendant have minimum contacts with the forum 'such that the
2  maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"
3  *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (quoting *Int'l*
4  *Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction may be founded on either
5  general jurisdiction or specific jurisdiction." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316,
6  1320 (9th Cir. 1998). Specific jurisdiction over a defendant exists where: (1) the defendant has
7  purposefully directed its activities at the forum state or has purposefully availed itself of the
8  privileges of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those
9  activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*,
10  374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985). "The
11  plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to
12  satisfy either of these prongs, personal jurisdiction is not established in the forum state."
13  *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted).

14  Google has demonstrated that Defendants are subject to personal jurisdiction in California.
15  Defendants purposefully availed themselves of the privileges of doing business in California by
16  affirmatively seeking and using the services of Google—a limited liability company with its
17  principal place of business in this District. Google's claims arise from Defendants' alleged
18  tortious acts directed within California. Also, Defendants gave actual consent to personal
19  jurisdiction and venue in this District by agreeing to Google's TOS. *See Yelp Inc. v. Catron*, 70 F.
20  Supp. 3d 1082, 1099 (N.D. Cal. 2014); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d
21  1039, 1061 (N.D. Cal. 2010). Google's TOS explicitly states that "all disputes arising out of or
22  relating to these terms . . . will be resolved in the federal or state courts of Santa Clara County,
23  California, USA, and [the user] and Google consent to personal jurisdiction in those courts."
24  Assertion of personal jurisdiction is therefore reasonable, foreseeable, and fair.

25  Moreover, service on Defendants was adequate. A plaintiff must serve each defendant
26  with a summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1). Rule 4(f)(3) of the Federal
27  Rules of Civil Procedure permits service by any means not prohibited by international agreement,
28  as the court orders. Google complied with this method of service when this Court ordered service

via email and SMS message.  (Dkt. No. 15.)

**C. Standard Governing Default Judgment.**

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter a default judgment where the clerk, under Rule 55(a), has already entered the party's default based upon a failure to plead or otherwise defend the action.  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit has enumerated the following factors for consideration by courts weighing whether default judgment is appropriate:

> (1) The possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

After default is entered, the well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  In determining liability and the amount of the default judgment, a court is not required to make detailed findings of fact.  *Id*.  Moreover, the default judgment awarded cannot exceed the amount demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**D. Analysis.**

Upon review of the well-pleaded allegations in this case, the Court finds that the *Eitel* factors in favor of default judgment.

**1. Prejudice to Plaintiffs.**

District courts grant default judgment where plaintiffs are left without an alternative remedy because defendants have failed to appear or otherwise defend the action against them. *See, e.g., Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  The Court finds that this factor weighs in favor of granting default judgment here because Defendants have failed to defend the action and Google has no alternative means of vindicating their rights.

/ / /

**2. Merits of Plaintiff's Claims and Sufficiency of the Complaint.**

The Court takes the well-pled allegations in this case as true after the entry of default. 285 F.3d at 906. Evaluating the merits of Plaintiff's claims and the sufficiency of its Complaint, the Court concludes that the second and third *Eitel* factors likewise support entry of default judgment.

On the first claim for misrepresentation of copyright infringement, Google's claim has merit because Google correctly alleged the required elements under 17 U.S.C. § 512(f) that Defendants "knowingly and materially misrepresent[ed]" that copyright infringement has occurred, that Google "relied" on such misrepresentations, and that Google has been "injured" as a result. (Dkt. No. 29 at 7). Defendants submitted fraudulent takedown requests, seeking removal of at least 117,000 third-party website URL's and product listings from Google Search results. (*Id*.) This claim is also sufficient because, in reliance on the fraudulent takedown requests, Google delisted the targeted URLs from Google Search results. (*Id*.) Specifically, Google identified at least four currently active Google accounts that were used to submit the fraudulent takedown requests (which are linked to at least 61 other Google accounts): vanduc1993@gmail.com, duchero93@gmail.com, thienpv1982@gmail.com, and phamthaits@gmail.com. (Dkt 29-1, ¶ 4.) Google also provided an example of a specific fraudulent takedown request, in which ngankha112947@gmail.com was used to impersonate Elon Musk and used to submit a takedown request of multiple websites. (Dkt No. 29-2, at 2-5.)

Regarding Google's second claim for breach of contract, Google's claim has merit because Google adequately alleged the required elements for breach of contract. (*Id*. at 7) Under California law, the four elements for a breach of contract cause of action are: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). First, Google has alleged that there is a valid contract between Google and Defendants when they agreed to Google TOS and Gmail Program Policies; this is sufficient to establish a contract in California. *See Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970 (N.D. Cal. 2015). Second, Google performed all their material obligations under the contract. (Dkt. No. 29 at 8.) Third, Defendants, as described above, breached the contract when they created dozens of Gmail

accounts to submit fraudulent takedown requests, in violation of Google's TOS and Gmail Program Policies. (*Id*.) Fourth, Defendants' breaches caused Google to suffer damages because, as mentioned in this first cause of action, Google delisted the targeted URLs from Google Search results, affecting more than 117,000 web pages belonging to third parties, which caused Google to lose advertising revenue from those third parties and which damaged Google's reputation among customers and businesses. (*Id*. at 8-9.)

Turning to Google's claim of intentional interference with contractual relations, this claim has merit because Google adequately alleged intentional interference with contractual relations. (*Id*.) Under California law, the five elements for an intentional interference with contractual relations cause of action are: (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Facebook, Inc. v. BrandTotal, Ltd.*, 499 F. Supp. 3d 720, 738 (N.D. Cal. 2020) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). First, there was a valid contract between Google and third-party sellers who purchased advertisements on Google Search results. (Dkt. No. 29. at 9.) Second, Defendants knew about the contract(s). (*Id*.) Third, Defendants' intentional acts were designed to induce a breach or disruption of the contractual relationship. (*Id*.) Fourth, there was an actual breach or disruption of the contractual relationship. Specifically, the fraudulent takedown requests induced Google to de-list the targeted URLs. (*Id*.) Fifth, there was actual damage caused to Google because Defendants' interference with Google's contractual relations caused Google to lose millions of dollars in revenue by the time Google was able to reinstate all the URLs targeted by the fraudulent submissions. (*Id*.) Specifically, Google lost at least two million dollars of revenue. (Dkt 29-1, ¶ 20.)

**3. Sum of Money at Stake.**

The fourth *Eitel* factor focuses on the amount at issue in the action. "[C]ourts should be hesitant to enter default judgments in matters involving large sums of money." *Yelp*, 70 F. Supp. 3d at 1099-1100. "When the money at stake in the litigation is substantial or unreasonable, default

judgment is discouraged." *Board of Trs. v. Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472).  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.*  (citations omitted*); see also Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (discussing that this factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct").  Here, Google is not seeking monetary relief; it seeks only equitable relief.  (Dkt. No. 29 at 9-10.) Therefore, this factor weighs in favor of default judgment for Google.  (*Id.*)

### 4. Remaining *Eitel* Factors.

As a preliminary matter, because Defendants have not answered the Complaint or otherwise appeared in this action, the possibility of a dispute concerning material facts is unknown.  That said, there is no evidence or indication that Defendants' failure to appear was due to excusable neglect.  Google properly served Defendants and there is evidence that Defendants were given actual notice.  Defendants have had months to appear and have failed to do so.  (See Dkt. No. 23.)

Finally, although the seventh *Eitel* factor—balancing the policy consideration that whenever reasonably possible cases should be decided on their merits—weighs against default judgment, the Court finds that the majority of other factors weigh heavily in favor of default judgment.  Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case.  Fed. R. Civ. P. 55(b); *see also Bd. of Trustees v. RBS Washington, LLC*, 2010 WL 145097 at *4 (N.D. Cal. Jan. 8, 2010).  Here, Defendants failed to litigate.

In light of its consideration of the *Eitel* factors, the Court recommends that default judgment be entered against Defendants.

### E. Conclusion and Remedy.

The Court RECOMMENDS that the District Court GRANT Google's motion for default judgment against Defendants.  The Court RECOMMENDS that the District Court GRANT Google its requested injunctive relief.  Specifically, the Court RECOMMENDS the District Court

order that:

Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or at the discretion of Defendants, are hereby permanently enjoined from the following:

1. Submitting any notifications of copyright infringement or takedown requests to Google based on false assertions of right of copyright ownership.
2. Creating or attempting to create any Google accounts.
3. Using any Google products or services to promote any of Defendants' websites or products.
4. Using any Google products or services to harm or attempt to harm any third parties, including without limitation Google's Search Ads customers.
5. Assisting, aiding, or abetting any other person or entity in engaging or performing any of the activities described in subparagraphs (1) through (4) above.

The Court retains jurisdiction of this action to enforce this Order.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local Trust 595 Trust Funds, v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. April 20, 2011).

**IT IS SO ORDERED**.

Dated: July 23, 2024

*Sallie Kim*

SALLIE KIM
United States Magistrate Judge